In the Matter of SADIE KIVO, Petitioner, v ARTHUR LEVITT, as Administrator of the New York State Employees' Retirement System and Comptroller of the State of New York, Respondent.

Third Department, April 26, 1979

### APPEARANCES OF COUNSEL

*Beverly Gross* for petitioner.

*Robert Abrams,* Attorney-General *(William J. Kogan* and *Shirley Adelson Siegel* of counsel), for respondent.

### OPINION OF THE COURT

STALEY, JR., J.

Petitioner Sadie Kivo was employed by the Brooklyn Public Library, and is a member of the New York State Employees' Retirement System. She sues on her own behalf and for others similarly situated, who are retired members of the system, and former employees of the Brooklyn Public Library, the Queens Borough Public Library, and the New York Public Library. The employees of the New York City Public Library System are members of the New York State Employees' Retirement System, and the City of New York funds the salaries and pension contributions of the library employees. Petitioner retired on November 19, 1976.

Section 75 of the Retirement and Social Security Law provides that a member shall receive a retirement allowance which shall consist of, *inter alia,* a pension computed on the basis of final average salary, which is multiplied by the number of years for which the member has service credits. Section 2 of that law defines "final average salary" as the average annual compensation earned during any three consecutive years of the member's creditable service. "Annual compensation" is defined as salary or wages annually earnable by a member.

Petitioner had been scheduled to receive certain wage in-

creases for the period June 30, 1975 to June 30, 1976, pursuant to a previously executed collective bargaining agreement between the city and the union representing the library employees.

During the year 1975, the fiscal authority for the City of New York, a corporation known as the Municipal Assistance Corporation, was having difficulty floating municipal bonds. In order to make the bonds more readily saleable, the city and the union agreed that the employees would accept a deferral of the wage increase due them. The deferral of the wage increase was to be in effect for the period from September, 1975 to September, 1976. Such deferral of petitioner's increase in salary did occur, and the amount of the wage increase deferral has not been paid to petitioner.

After hearings held before the hearing officer designated by respondent on petitioner's application, a decision was rendered on December 7, 1977 which denied petitioner's request for a redetermination of respondent's ruling that the amount of the deferred salary increase should not be included in petitioner's final average salary for pension purposes.

The main issue is whether petitioner is entitled to have included in the computation of her pension certain moneys which had been negotiated as pay raises, but which were never paid to petitioner as a result of the New York State Financial Emergency Act for the City of New York (L 1975, ch 868, eff Sept. 9, 1975, hereafter referred to as the "Emergency Act"). Petitioner concedes she is subject to the Emergency Act.

Subdivision 1 of section 10 of the Emergency Act authorized a wage freeze for city employees as of June 30, 1975. It also provided that: "For the purposes of computing the pension base of retirement allowances, the suspended salary or wage increases and the suspended other payments shall not be considered as part of compensation or final compensation or of annual salary earned or earnable."

Subdivision 2 of section 10 of the Emergency Act provided as follows: "This section shall not be applicable to employees of the city or employees of a covered organization covered by a collective bargaining agreement or an employee of the city or a covered organization not covered by a collective bargaining agreement where the collective bargaining representative or such unrepresented employee has agreed to a deferment of salary or wage increase, by an instrument in writing which has been certified by the mayor on or before September first,

nineteen hundred seventy-five, or certified by the board after September first, nineteen hundred seventy-five as being an acceptable and appropriate contribution toward alleviating the fiscal crisis of the city."

Petitioner contends that the exclusion of suspended wage increases from computing her pension base contained in subdivision 1 of section 10 should not apply because a wage deferral agreement had been entered into between the City of New York and the union representing the employees and that, therefore, subdivision 2 of section 10 became effective. The hearing officer concluded that there was no evidence in the record that an agreement in accordance with subdivision 2 of section 10 of the Emergency Act was in effect, and no proof that subdivision 1 of section 10 was not applicable to petitioner. In addition, a reasonable interpretation of the provisions of subdivision 2 would limit the effectiveness of section 10 to the deferral of wage increases, and not to eliminate the provision in subdivision 1 relating to computation of the pension base.

When a question of substantial evidence is raised, the court should review the whole record to determine whether there is a rational basis in the record to support the agency's determination. The proof in the record here supports the conclusion that the conditions precedent to inclusion of deferred pay raises in the wage base for computation of pensions were not met (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176).

On May 28, 1976, Deputy Comptroller John S. Mauhs, in a letter to the Executive Director of American Federation of State, County and Municipal Employees stated:

"It remains our opinion that any New York City employee who is a member of this Retirement System cannot receive credit for retirement purposes for the amount of a 'deferred increase' provided for by Labor Relations Order 75/85 of the City of New York. * * *

"We call your attention to the definition of the terms 'final average salary', 'government service', and 'paid service', in section 2 of the Retirement and Social Security Law. Since the employees of the Brooklyn Public Library will not be paid the deferred sums during the period in question, such sums cannot be considered to be related to credited government service, and thus may not be included in the computation of final average salary."

■ In calculating pension benefits, respondent must determine "final average salary", as defined in the Retirement and Social Security Law which in turn relies upon the definition of "annual compensation". Subdivision 2 of section 2 of the Retirement and Social Security Law provides that annual compensation is the salary or wages annually earnable and received by the member. Respondent contends that "wages annually earnable" have always been required to have been actually paid to and received by the member of the State Retirement System on account of employment rendered prior to retirement. Deferred or suspended wages dependent upon some contingent future event have never been included in final average salary. Furthermore, section 431 of the Retirement and Social Security Law prohibits the inclusion of deferred compensation lump-sum payments in the computation of final average salary. A municipality may not agree through the collective bargaining process to grant retirement benefits which are contrary to State law. In the absence of State statute permitting the inclusion of deferred wages in the computation of pension benefits, there is no authority to grant petitioner's application for such relief.

We have considered the other issues raised by petitioner and find them to be without merit.

The determination should be confirmed, and the petition dismissed, without costs.

SWEENEY, J. P., KANE, MAIN and MIKOLL, JJ., concur.

Determination confirmed and petition dismissed, without costs.