In the Matter of IRVING N. SELKIN, Petitioner, v EDWARD V. REGAN, as Comptroller of the State of New York and Administrator of the New York State Employees' Retirement System, Respondent.

Third Department, November 20, 1986

### APPEARANCES OF COUNSEL

*Irving N. Selkin,* petitioner *pro se.*

*Robert Abrams, Attorney-General (Frank K. Walsh* and *William J. Kogan* of counsel), for respondent.

### OPINION OF THE COURT

HARVEY, J.

This proceeding involves a dispute as to the correct method for calculating petitioner's retirement benefits. The specific issue on appeal is whether lag pay received by petitioner on June 30, 1986, but earned more than three years earlier, should be included in computing his final average salary. Final average salary, which is used to compute a retiree's pension benefits, is calculated by taking the "highest average annual compensation earned during any three consecutive years of member service" (Retirement and Social Security Law § 2 [9] [b]).

The facts are not in dispute. Petitioner became a member of the New York State Employees' Retirement System (the System) in January 1938. In 1982, the Civil Service Employees Association and the Office of Court Administration entered into a contract providing for salary increases for certain employees of the Unified Court System. Petitioner received a salary increase pursuant to this contract. However, in order to implement the salary increases, the State instituted a lag payroll for the first year of the contract *(see,* L 1982, ch 353, § 5). The result of the lag payroll was that petitioner did not receive pay for the work period of March 24, 1983 through April 6, 1983. Payment for this period was to be paid to petitioner upon his retirement.

Anticipating retirement, petitioner advised the System in May 1985 that he wished to have his lag payment of $3,053.36 included in the calculation of his final average salary. Petitioner planned to retire on June 30, 1986; thus, the three-year

period for calculating his final average salary was July 1, 1983 through June 30, 1986. The System refused petitioner's request to have his lag payment included in his final average salary, stating that the subject payment had not been earned within the three-year period used to calculate his final average salary. Petitioner then contacted respondent and supplied respondent with a memorandum of law in support of his position. Respondent treated this correspondence as a request for an administrative hearing. Following the hearing, respondent denied petitioner's request. This proceeding ensued.

Petitioner urges that salary received by him during the three-year period used to calculate his pension benefits must be included in his final average salary regardless of when he actually earned the money. He contends that *Matter of Kivo v Levitt* (67 AD2d 464, *affd* 50 NY2d 1017) fully supports his position. In *Kivo,* the issue faced by this court was whether the petitioner was entitled to include in the computation of her pension benefits certain moneys which had been negotiated to have been pay raises during her three-year base period, but which were not paid because of the New York State Financial Emergency Act for the City of New York (L 1975, ch 868). A review of the record in that case reveals that the petitioner's claimed compensation was merely potentially payable, contingent upon future events occurring subsequent to the petitioner's retirement. The contingent events apparently did not occur and thus petitioner did not actually receive the contemplated pay increases at any time. Since the petitioner in *Kivo* had neither received the money she wished to include in her pension benefits nor had she established an absolute right to that money, the Comptroller determined that those funds should not be included in the calculation of pension benefits. That determination was confirmed.

Retirement and Social Security Law § 2 (2) (a) defines annual compensation as "[t]he salary or wages annually *earnable* by a member, including maintenance, or any allowance in lieu thereof, received by the member" (emphasis supplied). Retirement and Social Security Law § 2 (9) (b) provides that final average salary includes the "highest average annual compensation *earned* during any three consecutive years of member service" (emphasis supplied). A plain reading of the statutory language supports respondent's interpretation that annual compensation consists of income *earned* during the subject year *(see, Matter of Subway-Surface Supervisors Assn. v New York City Tr. Auth.,* 56 AD2d 53, 60-61, *mod on other grounds*

44 NY2d 101; *Matter of Weber v Levitt,* 41 AD2d 452, 456, *affd* 34 NY2d 797, *cert denied sub nom. Lecci v Levitt,* 419 US 997).

Petitioner further contends that Retirement and Social Security Law § 431 has been unconstitutionally applied to him. That section, which prohibits including lump-sum payments for deferred compensation in any form of termination pay in the salary base for the computation of retirement benefits, has been held unconstitutional as applied retroactively to State employees who were members of the System prior to the June 17, 1971 effective date of the statute *(see, e.g., Kranker v Levitt,* 30 NY2d 574). Here, respondent's determination did not indicate any reliance on Retirement and Social Security Law § 431. Indeed, that statute affects only "the salary base for the computation of retirement benefits", which is determined by the applicable three-year period (Retirement and Social Security Law § 2 [9]; *see, Matter of Weber v Levitt,* 41 AD2d 452, 457, *supra).* Since the lag pay in question was not earned within the three-year calculation period, we conclude that the application of Retirement and Social Security Law § 431 was not necessary to support respondent's determination.

Petitioner also asserts that respondent's determination is unjust since the lag pay of System members who retired on or before April 6, 1986 was included in their final average salaries (since their retirement occurred within three years of the deferred pay period of 1983), whereas members who retired after April 6, 1986 had their lag pay excluded. However, members of the System who retired prior to April 6, 1986 would have received one less check during the previous three years because the lag payroll occurred during that time. Hence, allowing these employees to include the lag pay, which was earned within three years of their retirement, merely resulted in their pension being based on the same number of checks as received by those employees retiring after April 6, 1986.

Petitioner's other arguments have been considered and found to be unpersuasive.

MAHONEY, P. J., MAIN, MIKOLL and YESAWICH, JR., JJ., concur.

Determination confirmed, and petition dismissed, without costs.